UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  PAULA PEZZA,                                        :

                          Plaintiff,             :

                                                    :     **MEMORANDUM**
                  -against-                      :     **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,  :     19-cv-3254 (BMC)

                        Defendant.       :
------------------------------------------------------------ X

**COGAN**, District Judge.

Plaintiff seeks social security disability insurance benefits, alleging that she became disabled on June 2015 due to various medical issues, including rheumatoid arthritis, osteoarthritis, fibromyalgia, bilateral knee injury, spinal disease, and irritable bowel syndrome. The Administrative Law Judge disagreed and found that she was not disabled as defined by the Social Security Act, 42 U.S.C. § 401. Specifically, the ALJ found that plaintiff could perform light work with certain restrictions.[1]

Plaintiff's motion for judgment on the pleadings raises four arguments: (1) the ALJ improperly disregarded the opinion of her treating physician; (2) the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence; (3) the ALJ improperly evaluated the testimony of the vocational expert; and (4) as of plaintiff's fiftieth birthday, a finding of disability was mandated under 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14.

---

[1] The ALJ determined that plaintiff could occasionally push/pull; never operate foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; occasionally reach, including overhead; occasionally handle; frequently feel and finger; and should avoid concentrated exposure to extreme temperatures, wetness, and humidity.

All of these arguments lack merit, and I therefore grant defendant's cross-motion for judgment on the pleadings, deny plaintiff's motion, and dismiss the action.

## DISCUSSION

I.  **Treating Physician Rule**

The treating physician rule "mandates that the medical opinion of a [plaintiff's] treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). However, the ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other evidence in the record. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). A treating physician's opinion may also be rejected if it is internally inconsistent or otherwise uninformative. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ must provide "good reasons" for affording limited weight to the treating source's opinion and more weight to a non-treating source. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The "mere diagnosis of fibromyalgia without evidence as to the severity of symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). With respect to pain, the Second Circuit has explained that "disability requires more than a mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude substantial gainful employment." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

On November 2017, plaintiff's treating physician and internist, Dr. Miguel Tirado, provided a restrictive opinion in the form of a check-box questionnaire that plaintiff could only lift and carry less than 10 pounds; stand and/or walk for less than 2 hours in an 8-hour workday;

2

and that she needed to periodically alternate between sitting and standing throughout the day to relieve pain or discomfort.  For the medical findings supporting his opinion, he wrote, "Patient [has] rheumatoid arthritis [and] suffers from significant joint pain."

I reject plaintiff's contention that the ALJ erred by affording this opinion "little weight." Not only was Dr. Tirado's highly restrictive opinion inconsistent with his treatment notes, but it was also contradicted by the weight of other evidence in the record.

Dr. Tirado's assessment was at odds with his treatment notes from June 2015 to October 2017.  During that timeframe, plaintiff visited Dr. Tirado's medical clinic over a dozen times, and the medical records from these examinations generally documented normal findings, with the exception of limited range of motion in her right shoulder due to pain.

These voluminous records, unlike Dr. Tirado's restrictive opinion, omit any reference to any severe impairment as to plaintiff's ability to use her hands or walk.  Nor was there ever a recommendation that she restrict her daily activities or alternate between sitting and standing throughout the day.  Rather, as pointed out by the Commissioner, Tirado and his Physician's Assistant, PA Keith Kouroupos, consistently stated that plaintiff maintained normal sensation and strength and showed no swelling in her extremities; a normal gait; and that her deep tendon reflexes were in the "brisk and normal" range.

When it came to any "musculoskeletal" issues, the medical records failed to suggest any significant joint pain.  A month before Dr. Tirado provided his restrictive opinion, plaintiff visited his office and saw PA Kouroupos.  Although PA Kouroupos documented that she complained of joint pain and swelling, his medical findings were otherwise unremarkable, generally echoing the evaluations from her prior visits.

3

Accordingly, the ALJ properly afforded Dr. Tirado's highly restrictive opinion little weight because it was inconsistent with his own contemporaneous treatment notes, which were fairly benign. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017).

Dr. Tirado's questionnaire was also inconsistent with the great weight of other medical evidence in the record.

First, after examining plaintiff in August 2015 at the Commissioner's request, Dr. Chitoor Govindaraj, a pulmonologist, assessed that plaintiff had no swelling in her extremities; exhibited normal reflexes and range of motion of her back and joints; and that her hands and fingers revealed normal dexterity. Specifically, he noted that plaintiff was able to flex her extremities with no discomfort and that she exhibited no signs of stiffness or pain in her joints. Based on this examination, he opined that plaintiff had no restrictions in her ability to sit, stand, walk, or carry weight.

Second, from November 2015 through January 2017, plaintiff had over seven appointments with her rheumatologist, Dr. Melissa LaRusso. During these examinations, plaintiff exhibited no tenderness, swelling, or pain in her extremities; had a normal range of motion when extending and flexing; and normal grip. Dr. LaRusso also conducted regular McMurray tests with negative results.[2] In November and December 2015, two MRIs of plaintiff's hands revealed no abnormalities, such as evidence of a degenerative or inflammatory disease (there was mild inflammation in one of her joints indicating a low-grade sprain). In January 2017, Dr. LaRusso again found that plaintiff had normal range of motion and stability in her knees, normal sensation and reflexes in her hands and joints, and normal grip strength.

---

[2] A McMurray test is a rotation of the tibia on the femur to determine if there is any damage to the cartilage that acts as a shock absorber between your joints. See Valentine v. Berryhill, No. 16-cv-2956, 2017 WL 3917004, at *3 n.4 (S.D.N.Y. Sept. 6, 2017).

4

<u>Third</u>, plaintiff saw Dr. Florence Shum, a neurologist, in July 2016. According to her treatment notes, plaintiff had normal tone, bulk and power in all her extremities and normal coordination, sensation and reflexes. Plaintiff's finger movements were intact, and she did not experience any involuntary movements or tremors in her fingers. A follow-up examination with Dr. Shum in October 2016 resulted in similar findings.

<u>Fourth</u>, in December 2016, Dr. Vincent Ruggiero, an orthopedic specialist, determined that plaintiff had "good" passive and active range of motion in her fingers and wrists, with no tenderness in either. He assessed no structural abnormalities that would require orthopedic surgical intervention and, despite her complaints of discomfort in her hands, he merely recommended that she continue her current medical treatment.

There is some evidence in the record which is not inconsistent with Dr. Tirado's opinion. Dr. Yousif Abdel-Jawad, an internist, examined plaintiff at the Commissioner's request on December 2017, and opined that plaintiff could not lift or carry any weight; that she could stand and walk for a total of less than 2 hours during a 8-hour workday; and that she could never push and pull with her extremities. But he assessed that she could frequently climb, balance, stoop, kneel, crouch, and crawl.

The ALJ comprehensively explained why she discounted his opinion. Similar to Dr. Tirado's, it was inconsistent with his own contemporaneous medical findings, which were unremarkable. <u>See</u> <u>Monroe</u>, 676 F. App'x at 8. Specifically, Dr. Abdel-Jawad stated that plaintiff had a "slight decreased" range of motion in her wrists and fingers, but that her hand grip, gait, balance, motor power of her extremities, and reflex findings were normal.

Furthermore, not only did his opinion parrot plaintiff's subjective complaint that "she could not lift anything and could only sit or stand for 20 minutes," it was also contradicted by the

5

weight of the medical evidence in the record, that is, the findings of Drs. Govindaraj, LaRusso, Shum, and Ruggiero, along with the treatment notes of Dr. Tirado and PA Kouroupos. See Rock v. Colvin, 628 F. App'x 1, 4 (2d Cir. 2015).[3]

It would appear that the four other physicians are describing a completely different patient than Dr. Tirado and Dr. Abdel-Jawad.  Although the four medical providers recognized plaintiff's rheumatoid arthritis and noted some tenderness, they never suggested that plaintiff suffered from significant or severe joint pain that would lead to restrictions in her daily activities. When such a genuine conflict arises from the medical evidence, the Commissioner should resolve it.  See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Therefore, the ALJ was not required to defer to plaintiff's treating physician because his opinion was undermined by his own voluminous treatments notes and contradicted by substantial medical evidence in the record.  See Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012).

## II. Substantial Evidence

Plaintiff's next contention is that the ALJ's RFC determination was deficient because it was not supported by substantial evidence.  The discussion of the evidence in the preceding point shows why this argument fails.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  An ALJ will assess a claimant's RFC by considering "all of the relevant medical and other evidence." Id. (a)(2).  If the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, her decision must be affirmed. See Richardson v. Perales, 402 U.S. 389, 401–02 (1971).  The substantial evidence standard

---

[3] Although not mentioned by the ALJ, Dr. Abdel-Jawad's opinion is internally inconsistent for another reason.  He provided a severely restrictive opinion as to plaintiff's ability to stand throughout the day or even lift any weight whatsoever, but then proceeded to opine that plaintiff could climb, stoop, kneel, crouch, and crawl for *up to two-thirds* of an 8-hour workday.

requires that a decision be supported "by more than a mere scintilla" of evidence, or, otherwise stated, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012).

Finding that plaintiff suffered from rheumatoid arthritis and fibromyalgia, the ALJ also found that these impairments were not so severe as to preclude light work with certain restrictions based on the other medical evidence in the record. The great weight of the evidence discussed above supports this conclusion.

In making an RFC determination, even though the ALJ ultimately gave little weight to Dr. Tirado's opinion, she was permitted to rely on the medical findings and treatment notes of Dr. Tirado and PA Kouroupos. See Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013). The voluminous medical records created by Dr. Tirado and his physician's assistant from June 2015 to October 2017 provided sufficient evidence from which the ALJ could assess plaintiff's RFC. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013). Those medical records generally documented unremarkable findings (i.e., normal sensation, strength, gait and reflexes) and failed to mention any severe joint pain in plaintiff's extremities.

### III. Vocational Expert's Testimony

Plaintiff's penultimate contention that the ALJ's RFC finding was inconsistent with the Vocational Expert's testimony need not detain us long. Although the Vocational Expert, in response to a hypothetical posed by plaintiff's counsel, initially testified that no jobs were available for a claimant with certain limitations, the witness later clarified her testimony under

questioning by the ALJ, stating she misunderstood plaintiff's counsel's question, and proceeded to testify that a hypothetical claimant in plaintiff's shoes could in fact work as a counter clerk and furniture rental consultant.

**IV.    Rule 201.14**

To the extent plaintiff claims that the ALJ was required to find her disabled as of her fiftieth birthday, she cannot prevail for two reasons.

Medical-Vocational Rule 201.14 directs a finding of disabled when the claimant is: (1) closely approaching advanced age; (2) limited to sedentary work; (3) without transferable skills from previous work; and (4) his or her educational background does not provide for direct entry into skilled work.  See 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14.

Plaintiff raised this issue in a single sentence at the end of her motion in this Court, and did not even attempt to advance any reasoned argument.  It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  Tolbert v. Queens College, 242 F.3d 58, 76 (2d Cir. 2001); see also In re Lehman Brothers Inc., No. 11-cv-6052, 2015 WL 1822646, at *8 (S.D.N.Y. April 22, 2015) (finding waiver when issued is not further developed beyond a single sentence in an opening brief).  Plaintiff has thus waived this issue.

In any event, Rule 201.14 does not help plaintiff.  The rule only applies to claimants who do not have transferrable skills.  Here, the Vocational Expert testified that a hypothetical claimant with plaintiff's work history had transferable "sales skills."

8

## CONCLUSION

Plaintiff's motion for judgment on the pleading [10] is denied, and the Commissioner's cross-motion for judgment on the pleading [12] is granted. The complaint is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                    U.S.D.J.

Dated: Brooklyn, New York
       June 28, 2020